John A. Hadden v. Commissioner. Gardner Abbott v. Commissioner.
Hadden v. Commissioner
Docket Nos. 6571, 6845.
United States Tax Court
1946 Tax Ct. Memo LEXIS 145; 5 T.C.M. (CCH) 533; T.C.M. (RIA) 46155; June 28, 1946
*145 John A. Hadden, Esq., and Thomas M. Harman, Esq., for the petitioners. Lawrence R. Bloomenthal, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, consolidated for hearing and disposition, involve deficiencies in income tax for the year 1941 in amounts as follows: Petitioner
Docket No.
Deficiency
John A. Hadden
6571
$4,943.97
Gardner Abbott
6845
7,211.03
The issue is whether John A. Hadden, petitioner in docket No. 6571, should be allowed the deduction claimed in the amount of $4,280, representing $2,500 principal and $1,780 interest, and whether Gardner Abbott, petitioner in docket No. 6845, should be allowed the deduction claimed in the amount of $20,187.20 as a bad debt, or in the alternative a long-term capital loss. From evidence, both documentary and oral, we make the following Findings of Fact Both John A. Hadden and Gardner Abbott, petitioners, are practicing attorneys in Cleveland, Ohio. They filed their income tax returns for 1941 with the collector of internal revenue at Cleveland, Ohio. In about 1920 petitioners became interested in a corporation known as the Postergraph *146 Company, Inc., which was organized for the purpose of conducting a lithograph business and developing a process of producing lithoraphic plates by a photographic process. This corporation became insolvent in 1926 and at that time certain stockholders of the old company organized a new corporation, known as Postergraph, Inc., under the laws of the State of Delaware. The new corporation took over all of the assets of the old company subject to all of its liabilities, which were very heavy. Postergraph, Inc., continued in the business of producing the photographic plates, but primarily was engaged in developing the patented process for producing such plates by photographic projection. In January 1929 it interested the publishers of the Chicago Tribune in the process. The Chicago Tribune established a plant for experiment with the process. Their patent attorneys examined and approved the patents and patent applications. Its business manager, executive manager, with the approval of its attorneys, drafted a contract for license to use exclusively certain of the processes developed by Postergraph, Inc. They were to pay $490,000 plus 49 per cent of the stock of a company to be organized *147 to utilize the patented process. Negotiations for the proposed contract terminated when the "head" of the Chicago Tribune rejected the plan, sometime in or after April 1929. During the period from March 1, 1929, until February 1930, Postergraph, Inc., borrowed a total of $74,100 from a group. Of the above amount, petitioner Hadden advanced $2,500 and petitioner Abbott advanced $20,350. The $74,100 was raised on the security of the patents and patent applications which were on file in Washington, and was evidenced by demand notes. The patents and patent applications were assigned to petitioner Abbott as trustee. The assignment was negotiated through petitioner Abbott, as trustee for the holders of the notes by a letter dated March 2, 1929, reading as follows: March 2, 1929. Postergraph, Inc., Vulcan Building, 113 St. Clair Ave., Cleveland, Ohio. Gentlemen: In pursuance of arrangement ratified by your Board of Directors, I am handing you herewith the following checks from the persons as named, constituting the loan to Postergraph, Inc., of the amounts named, as of March 1, 1929: John Newell $10,000; M. A. Hanna $2,500. These amounts, together with $2,500 advanced by myself *148 February 23, 1929, are loaned on the following conditions: First: Postergraph, Inc., is to assign to Gardner Abbott, his heirs, legal representatives and assigns, two patents purchased by Postergraph, Inc., from The Postergraph Company, and all pending applications for United States letters patent filed by R. A. Glaser and assigned to Postergraph, Inc., and covering the entire projection process and equipment commonly known as the Postergraph Process, as well as any application which may be filed covering the plate coating of the plates used on such process. Pending such application the formula used in coating plates by Postergraph, Inc., is to be delivered to Gardner Abbott and all other formulas necessary in developing and producing printing plates by said process. Second: All of such patents, patent applications and formulas are to be held by Gardner Abbott as security for loans in the above amounts presently advanced and for future amounts advanced to Postergraph, Inc., from time to time. Third: Such advances are to be evidenced by notes dated as of March 1, 1929, for the present advances, and any future advances to be payable on demand with interest at the rate of 6% per *149 annum and payable to the persons making the advances as evidenced by checks therefor; that is, three notes as above are to be issued as follows: John Newell $10.000; M. A. Hanna $2,500; Gardner Abbott $2,500. Fourth: Gardner Abbott is to transfer to the persons making the advances above stated, or future advances when and as made, from the Class B capital stock issued to and held by Gardner Abbott, a number of shares equal to one share for each $100 so advanced as consideration for making such advances by such persons. Fifth: In the event that Postergraph, Inc., shall not be able to make payment for the notes aforesaid upon demand, the assigned patents, patent applications and formulas above set forth shall become absolute and the persons making such advances shall have no further claim against Postergraph, Inc., or its assets. All of the above advances or future advances under this agreement are to be held by you in a special account under this agreement. Your acceptance noted hereon will constitute a contract between us. Very truly yours, [Sgd.] Gardner Abbott ACCEPTED: POSTERGRAPH, INC., By [Sgd.] C. E. Moore, President. The assignment from Postergraph, Inc., to *150 petitioner Abbott, as trustee, after reciting the patents and patent rights to be assigned, is as follows: AND WHEREAS, Gardner Abbott * * * is desirous of acquiring the entire right, Title and interest in and to said Letters Patent, applications for Letters Patent, inventions and improvements, and said Trade-Mark Registration and the business to which it pertains in and throughout the United States of America, its Territories, and all countries foreign thereto, and in and to any and all divisional, reissue or renewal Letters Patent of the United States of America and countries foreign thereto, which have been or may be granted on said inventions and improvements or any part thereof, to be held by him in trust as security for money advanced and to be advanced to said Postergraph Inc., in accordance with certain trust agreements dated March 2, 1929 NOW, THEREFORE, for one dollar and other good and valuable consideration, receipt of which is hereby acknowledged, said Postergraph, Inc., has agreed to and does hereby sell, assign and transfer unto the said Gardner Abbott, as trustee, for the purposes of said trust agreement, the entire right, title and interest in and throughout the *151 United States of America, is Territories and all countires [countries] foreign thereto in and to said Letters Patent, applications for Letters Patent, inventions and improvements, and in and to said Trade Mark Registration and business to which it pertains, and any and all Letters Patent and extensions thereof, of the United States of America and countries foreign thereto which have been or may be granted on said inventions and improvements or any part thereof, or any divisional, continuing, renewal, reissue, or other application based in whole or in part thereon; TO BE HELD AND ENJOYED by said Gardner Abbott, his heirs, executors, administrators, successors, and assigns, to the full ends of the terms for which said Letters Patent or any of them have been or may be granted, as fully and entirely as the same would have been held and enjoyed by said Postergraph, Inc., had no sale and assignment of said interest been made., and said Postergraph, Inc., does hereby authorize and request the Commissioner of Patents of the United States of America to issue any and all Letters Patent of the United States of America which may be granted upon the said inventions and improvements above referred *152 to, or any of them, or any part thereof, to Gardner Abbott, trustee, aforesaid, and the said Postergraph, Inc., hereby agrees, for itself and for its successors and assigns, to execute without further consideration any further lawful documents and any further assurances, and any reissue, renewal, or other application for Letters Patent or said Trade Mark Registration that may be deemed necessary by the assignee herein named, fully to secure to the said assignee its interest as aforesaid in and to said inventions and improvements or any part thereof, and in and to said several Letters Patent or any of them. And said Postergraph, Inc., does hereby covenant for itself and its legal representatives, successors and assigns, and agree with Gardner Abbott, trustee, his heirs, executors, administrators, successors and assigns, that said Postergraph, Inc., has granted no license to make, use or sell the said inventions, that prior to the execution of this deed its right, title and interest in the said inventions and improvements have not been encumbered, that it then had good right and title to sell and assign the same and that it has not executed and will not execute any instrument in conflict *153 therewith. This instrument was duly recorded in the United States Patent Office. At or about the time the Chicago Tribune negotiations terminated, Postergraph, Inc., was in debt approximately $182,000, covering about $63,000 to Gardner Abbott. Petitioner Abbott obtained judgment against Postergraph, Inc., on a note for $5,000 which had been given to him for advances other than those represented by the notes issued under the assignment agreement, dated March 2, 1929. On June 11, 1930, he filed an action in the Court of Common Pleas of Cuyahoga County, Ohio, captioned "Petition for Receiver and Equitable Relief," alleging that the corporation was insolvent and requesting appointment of a receiver to conserve the assets for the benefit of creditors. Acting on the petition the court appointed two receivers who carried on the business of Postergraph, Inc., until the termination of the receivership, January 31, 1936. In 1931 Gardner Abbott charged off about $41,000 debt from Postergraph, Inc., and claimed worthlessness. During the period of the receivership the receivers and petitioner Abbott, as the holder of the patents, negotiated with lithographing companies throughout the country *154 in an effort to license the use of the process. In 1934 an agreement was made with Forbes Liihograph Co. of Boston, Massachusetts, whereby they were granted by Abbott, as Trustee, a license to operate under the patents, and the receivers sold to that company the machinery and apparatus necessary to use the process. The total sum paid by the licensee was $4,200. Also in March of 1935 a similar agreement was entered into with the Tooker Lithograph Co. of New York City under which the Tooker Co. paid over a period of three years $7,500 to Abbott as Trustee. This transaction included the granting of a license to operate under the patents and the sale of some minor equipment. In 1936 petitioner Abbott entered into an agreement with the Wesel Manufacturing Co. of Scranton, Pennsylvania, whereby the manufacturing company was to manufacture the apparatus and machinery necessary in using the Postergraph process. Petitioner Abbott, together with Mr. Moore, who was one of the two receivers of Postergraph, Inc., were to carry on the promotion and sales work in the lithographing trade and Abbott was to grant a license to use the patents to the purchasers of such apparatus. The selling price of *155 the apparatus was tentatively set at $15,000 which was to be divided equally between the manufacturing company and Abbott as the Trustee holder of the patents. The remaining physical assets of Postergraph, Inc., were sold January 27, 1936, at public auction for $25. At the time the receivership was closed, January 31, 1936, no value was assigned to the patents or equity in the patents, and the final report of the receivers dated January 31, 1936, did not list as an asset any patents or equity in patents. The corporation known as Postergraph, Inc., did not continue in existence after 1936. Its charter was canceled either in that year or prior thereto. The patents taken over in 1930 by petitioner Abbott as trustee for creditors were sold in 1941 for $500 to the Continental Lithograph Corporation. Abbott then made an accounting to the noteholders, entitled, "Gardner Abbott in account with PROJEKTOPLATE" in which is shown the receipts and disbursements of the account, with $651.16 available for distribution. The notes outstanding at that time were $74,100; the expense of distribution was $58.36. The amount of $592.80 was distributed to the noteholders on the basis of.8 per cent. *156 Petitioner Hadden received $20 on his $2,500 note. Petitioner Abbott received $162.80 on his $20,350 notes. Opinion In determining whether or not petitioners are entitled to a bad debt deduction for the year 1941, it is necessary to examine the instruments leading up to the sale of the patents and patent applications in December 1941. The petitioners, according to the lettercontract of March 2, 1929, advanced their money upon the basis not only of receiving the patents, patent applications and formulas as security for the loan, but also for receiving "from the Class B capital stock issued to and held by Gardner Abbott, a number of shares equal to one share for each $100 so advanced as consideration for making such advances by such persons." The letter closes by stating: "Your acceptance noted hereon will constitute a contract between us," and it is duly accepted by Postergraph, Inc., by its president. The petitioners contend here for worthlessness of debt, calculated by deducting from the amount of the advances made and interest the small amount received upon the sale of the patents in 1941. Assuming, without deciding, that the letter-contract of March 2, 1929, and the assignment *157 of March 4, 1929, together constitute not an absolute conveyance, but a conveyance by way of security and therefore redeemable, and that therefore when it was in effect foreclosed by sale of the pledged assets in 1941, the petitioners would have a deductible loss, nevertheless, under the sparse facts offered in evidence, we may not sustain the petitioners, for it is clear that in consideration for the advances made they were entitled to receive, and have not shown that they did not receive, considerable amounts of stock. A share for each $100 advanced would give petitioner Gardner Abbott 200 shares, and petitioner John A. Hadden 25 shares. If such stock was received on or about March 4, 1929, it may have had a considerable value. At that date the corporation was dealing with the Chicago Tribune, and about that time a contract to pay $490,000, plus 49 per cent of the stock of the company to be organized, for a license to use the patents, was drawn. This arrangement was not terminated until sometime not earlier than April 1929, for it was brought to the attention of the head of the Chicago Tribune in April, and he later decided that he would not accept the contract. If, therefore, stock *158 had been received, as indicated in the letter-contract, it might have been, and may have been, sold for some considerable price at that time, if not later. Obviously, any such realization upon what the petitioners received as consideration for making the advances here involved, must be taken into consideration in calculating their loss by way of worthlessness of the notes given for the advances. In the absence of any evidence as to the amount, if any, realized upon such stock, we are unable to determine the proper amount of any loss so sustained, or to say that the Commissioner's determination is erroneous. Nothing indicates that any profit (or loss) on such stock was otherwise accounted for. In this connection also, we note that the record does not indicate what company issued the Class B capital stock "issued to and held by Gardner Abbott," which was to be received as consideration for advances; also that the account of Gardner Abbott after the sale of the patents in 1941, and by the use of which petitioners calculate their loss, was an account with "PROJEKTOPLATE," apparently some organization not otherwise explained by the record, and not shown to be the same as, or have any *159 connection with "Postergraph, Inc.," with which the contract was made and to which the advances were made. In the state of the record herein, petitioners have failed to show error on the part of the Commissioner. Therefor Decision will be entered for the respondent.